UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:

Deirdre Ventura,

                        Debtor.
-----------------------------------------------------------------x

Case No. 8-18-77193-reg

Chapter 11

**MEMORANDUM DECISION OVERRULING OBJECTIONS TO THE DEBTOR'S
ELECTION AS A SUBCHAPTER V DEBTOR**

*Introduction*

The matter before the Court presents a series of legal issues that are for the most part

issues of first impression. The Court is being asked to rule on questions of law resulting from

amendments to the Bankruptcy Code pursuant to the Small Business Reorganization Act of 2019

which became effective on February 19, 2020. These amendments, commonly referred to as the

SBRA, were instituted to broaden the opportunity for small businesses to successfully utilize the

benefits of chapter 11 of the Bankruptcy Code. Congress recognized that many of the benefits

afforded to large corporate debtors under chapter 11 were for all practical purposes out of the

reach of smaller businesses. Chapter 11 is often an expensive and highly complicated

proposition. Many small businesses have neither the money nor the time to navigate the process,

even with the considerations given to small businesses prior to the enactment of the SBRA. Had

Congress been given a crystal ball with the power to see what the world is facing today,

including the severe disruption to our Nation's economy and its impact on small businesses,

Congress likely could not have drafted a more effective set of mechanisms to help these

businesses reorganize and hopefully survive. These amendments will be analyzed and challenged

over the coming months and years, as are all new significant changes to the law. While this case

may be one of the first to require a court to rule on the applicability and interpret complex issues,

courts in this country have been called upon since the founding of our Republic to respond to similar challenges.

In the case of Deirdre Ventura (the "Debtor"), these issues arise in the context of objections to the Debtor's recent amendments to her petition to designate herself as a small business debtor and to proceed as a subchapter V debtor. The objections require the Court to answer the following questions:

1) Can the Debtor amend her petition to take advantage of the benefits of the SBRA where the Debtor's case has been pending for over fifteen months and a creditor's proposed plan of reorganization has been scheduled for a hearing on confirmation?

2) Assuming the SBRA applies to the Debtor's case, does the Debtor qualify as a "small business debtor" within the newly amended definition of 11 U.S.C. § 101(51D)(A) where the majority of her debt consists of a mortgage encumbering the property where she both resides and operates a bed and breakfast?

3) Assuming the Debtor fits within the definition of a small business debtor, is the Debtor barred from utilizing provisions applicable to subchapter V debtors to modify the mortgage encumbering the property where she both resides and operates a bed and breakfast?

For the reasons set forth below, the Court answers the first two questions in the affirmative and finds that under its interpretation of 11 U.S.C. § 1190(3), the Debtor is not barred from utilizing this SBRA provision solely on the basis that the mortgage she seeks to modify is a purchase money mortgage secured by her residence. Based on the Court's answers to these questions, the objections to the Debtor's amended petition are overruled.

While these conclusions do not mean that the Debtor will succeed as a subchapter V debtor, the Debtor will be given a chance to proceed under this subchapter. The Debtor must still fulfill her obligations under subchapter V, including proposing a feasible plan and coordinating with the newly appointed subchapter V trustee.

### *Procedural History and Facts*

In 1981, the Debtor began working in the real estate brokerage business specializing in the sales and development of hotels and lodges. Ultimately, she became the sole owner of Innvest Hotel Brokers, LLC which she used to conduct a lodging property brokerage business. (Debtor's Objection to Mot. of Gregory Funding for Order Denying & Voiding Debtor's Election as a Sub-Chapter V Debtor, 1:2, Mar. 24, 2020, ECF No. 97.).

The Debtor, along with another individual, purchased the Harbor Rose Property (the "Property") in December 2007. The acquisition of the Property was financed in part by a $1 million dollar loan ("Note") secured by a mortgage ("Mortgage") on the Property from Wells Fargo Bank, N.A. ("Wells Fargo"). (Emergency Mot. to Prohibit Use of Cash Collateral. & for Relief from Auto. Stay, Exh. A, Nov. 12, 2018, ECF No. 17.). The Note and the Mortgage were eventually assigned in 2015 to Gregory Funding, as servicer for U.S. Bank National Association, as Indentured Trustee on Behalf of and with Respect to Ajax Mortgage Loan Trust 2015-B Mortgage-Backed Notes Series 2015-B ("Gregory"). *Id.* Exh. B. According to the proof of claim filed in this case, Gregory is owed $1,678,664.80. (Claim No. 3-1, Dec. 21, 2018.).

The Property is not a typical Long Island residence. The original structure was built in the mid-1800's and is located in Cold Spring Harbor, a small waterfront village on Long Island's North Shore. (Ventura Aff. ¶ 7.). The Property is registered on The National Registry of Historic Places. *Id*. It is also recognized as a significant historic structure by the Town of

Huntington Historic Preservation Society. *Id*. Rooms at the property from the time the Debtor acquired it were made available for rent by the Debtor as advertised on Craigslist, Facebook and Wimdu (a European version of Airbnb). (Ventura Aff. ¶ 5.). The Debtor has included as exhibits to her submission copies of emails from potential guests from 2009 through 2011. (Debtor's Objection to Mot. of Gregory Funding for Order Denying & Voiding Debtor's Election as a Sub-Chapter V Debtor, Exh. A, Mar. 24, 2020, ECF No. 97.). The documentary evidence supports a finding that paying guests were staying at the Property within the first year that the Debtor purchased the Property. At the time the Debtor purchased the Property, the Huntington Town Code only permitted individuals to rent two guest rooms out of their property. (Ventura Aff. ¶ 11.).

As with many local businesses, the Great Recession of 2008 had a drastic impact on the Debtor's hotel brokerage business. (Debtor's Objection to Mot. of Gregory Funding for Order Denying & Voiding Debtor's Election as a Sub-Chapter V Debtor, 3:3, Mar. 24, 2020, ECF No. 97.). Eventually, the Debtor defaulted on the Mortgage. *Id*. On January 18, 2013, Debtor filed a voluntary petition for relief from her creditors under chapter 7. (Case No. 8-13-70280-reg, ECF No. 1.) ("First Case"). The First Case was filed as a no-asset chapter 7 case, and the majority of the Debtor's debts were listed as consumer debts. *Id*. ECF 11. On May 1, 2013, the Debtor received a discharge and the case was closed shortly therafter. *Id*. ECF No. 16. On May 3, 2013, the Debtor formed Harbor Rose LLC ("Harbor Rose") as a New York State limited liability company. (Ventura Aff. ¶ 3 n.1.).

On February 6, 2014 the Debtor filed a voluntary petition for relief under chapter 13 ("Second Case"). (Case No. 8-14-70473-reg, ECF No. 1.). The Second Case was dismissed for the failure to file necessary documents. *Id*. ECF No. 33. Despite the fact that the Debtor

described her debts as primarily consumer debts, the Debtor included in Schedule I a breakdown of income and expenses from the operations of Harbor Rose. *Id*. ECF No. 10. From the information set forth in the Second Case, it is clear that the Debtor's sole source of income was derived from Harbor Rose, which was operating at the Property. Based on the information provided by the Debtor in the Second Case, there does not appear to be an attempt by the Debtor to mislead her creditors or to create a false impression regarding her use of the Property, notwithstanding her description of her debts as primarily consumer debts.

On February 18, 2015, the Debtor executed a loan modification with respect to the Note and Mortgage (the "Loan Modification"). (Emergency Mot. to Prohibit Use of Cash Collateral. & for Relief from Auto. Stay, 8:4, Nov. 12, 2018, ECF No. 17.). As part of the modification the co-owner of the Property transferred his interest to the Debtor. *Id*. Although the Loan Modification gave the Debtor more favorable terms, the Debtor defaulted on her obligations under the Loan Modification. *Id*. 9:4. In February of 2016, Gregory commenced a foreclosure action against the Debtor in the Supreme Court for the State of New York, Suffolk County. *Id*. 10:5.

Despite the Debtor's financial setbacks, the Debtor took steps to increase her ability to rent rooms to guests at the Property. The Debtor obtained a permit to operate as a bed and breakfast on May 4, 2016. (Ventura Aff. ¶ 11.). The Debtor urged one of the Town Councilpersons to sponsor an amendment to allow bed and breakfasts to provide up to four guest rooms and permit a maximum stay of 29 days. (Ventura Aff. ¶ 12.). The Debtor was successful in her endeavors and on November 16, 2017, the Debtor obtained a Certificate of Permitted Use for four guest rooms. (Ventura Aff. ¶ 13.). By June, 2018, the Debtor upgraded the Property to provide four guestrooms. *Id*. The Debtor also obtained the proper permits to add

an additional bathroom for guests, replaced the HVAC for a portion of the Property, upgraded the electric service, and built an enclosed porch with heat for year-round use. *Id*.

It appears there is no other such bed and breakfast in the Town of Huntington, and according to the Debtor's affidavit, there is no other similar bed and breakfast on Long Island as of March 24, 2020. (Ventura Aff. ¶ 10.). The Town of Huntington requires as a condition to receiving the bed and breakfast permit that the owner operator reside at the bed and breakfast premises. *Id*. In addition to its lodgings, Harbor Rose offers health and wellness package, including yoga classes, acupuncture treatments, massage treatments. (Emergency Mot. to Prohibit Use of Cash Collateral. & for Relief from Auto. Stay, 19:6, Nov. 12, 2018, ECF No. 17.).

On August 8, 2018, a judgment of foreclosure and sale was granted in favor of Gregory, with a sale date scheduled for October 25, 2018 (the "Foreclosure Sale"). *Id*. at 14-15:5-6. Pursuant to Gregory's Broker's Price Opinion dated October 02, 2018, the Property was valued at $1,200.000.00. *Id*. Exh. H. On October 24, 2018 (the Petition Date"), the Debtor filed a voluntary petition under chapter 11 (the "Current Case"). As of the Petition Date, Gregory was owed a total amount of $1,678,664.80. *Id*. at 17:6. The current value of the Property is unknown.

In the Current Case, the Debtor again described her debts as primarily consumer debts. (Case No. 8-18-77193-reg, ECF No. 1.). The Debtor also stated that she was an individual chapter 11 debtor and did not designate herself as a small business debtor. *Id*. The Debtor's description of the Property in the Current Case accurately set forth that it was being used as a place of business. For example, when the Debtor was asked "What is the property?" she checked the box "Other" and wrote "B&B Inn" on Schedule A/B instead of checking the box for

"Single-family" home. *Id*. In Schedule C, the Debtor claimed an exemption for the Property

pursuant to 11 U.S.C. § 522(b)(2) wherein she described it as "Bed & Breakfast." *Id*. Again, on

Schedule D, the Debtor described the Property as a "Bed and Breakfast." *Id*. The Debtor also

lists her income and expenses from the operations of Harbor Rose in her Statement of Current

Monthly Income. *Id*. ECF No. 26.

On November 12, 2018, Gregory moved this Court for an Order: (1) directing the Debtor

to establish a Debtor in possession account, directing immediate turnover of cash collateral to

the Debtor in possession account, and prohibiting the Debtor's use of cash collateral until the

motion and request for adequate protection payments to Gregory could be heard, pursuant to 11

U.S.C. § 363(C)(2)(B); (2) granting Gregory relief from the automatic stay pursuant to 11

U.S.C. § 362(d)(1); or alternatively (3) adequate protection payments pursuant to 11 U.S.C. §

363(e). (Emergency Mot. to Prohibit Use of Cash Collateral. & for Relief from Auto. Stay, at 3,

Nov. 12, 2018, ECF No. 17.). In December 2018, the Debtor agreed to pay monthly adequate

protection payments to Gregory in the amount of $3,5000, to maintain proper insurance on the

Property, and to timely remit taxes due subsequent to January 1, 2019. (Agreed Order Resolving

Mot. for Adequate Protection Payments, at 1-2, Dec. 13, 2018, ECF No. 32.).

With the consent of the parties, the Court entered an order directing the Debtor and

Gregory to participate in the Loss Mitigation Program with respect to the Property. (Order

Directing the Debtor and Creditor Gregory Funding, as servicer for US Bank as Indentured

Trustee to Ajax Mortgage Loan to participate in the Loss Mitigation Program, Dec. 20, 2018,

ECF No. 35.). In June of 2019, the parties agreed to terminate loss mitigation, to increase the

adequate protection payment to Gregory to $4,800 monthly, and to require that by September 30,

2019, the Debtor file a proposed disclosure statement and chapter 11 plan of reorganization

acceptable to Gregory in its sole and absolute discretion. (Further Agreed Order Concerning Adequate Protection Payments, *Inter Alia*, June. 11, 2019, ECF No. 53.). In the event the Debtor's proposed disclosure statement and plan were deemed unsatisfactory to Gregory, Gregory would be permitted to file a competing plan which would provide for the sale of the Property to satisfy the Mortgage. *Id*. The Debtor failed to file a proposed disclosure statement and plan by the September 30, 2019 deadline, which effectively terminated the Debtor's exclusivity as an individual chapter 11 debtor.

At the November 19, 2019 status conference, the Court directed the Debtor and Gregory to each file a proposed plan of reorganization and disclosure statement by December 13, 2019. As expected, Gregory's proposed plan provided for an auction sale of the Property subject to higher and better offers. (Chapter 11 Plan of Liquidation, Dec. 13, 2019, ECF No. 60.). Gregory's proposed plan also provided for a carve out from the sale proceeds to pay all the other classes in full. *Id*. The Debtor's proposed plan sought to modify the Mortgage by reducing the secured portion of Gregory's claim to $1,050,00, which the Debtor represented was the value of the Property at that time, and repaying the secured portion of the claim over 30 years at 4.25 percent interest per annum. (Debtor's First Amended Plan of Reorganization, Dec. 20, 2019, ECF No. 67.). According to the Debtor's proposed plan, Gregory would receive no payment on account of the unsecured portion of its claim because the Debtor had previously received a discharge in the First Case. *Id*.

The viability of the Debtor's plan hinged on her ability to utilize 11 U.S.C. § 1123(b)(5) to bifurcate the Mortgage into a secured and unsecured claim, and to pay only the secured portion in full. However, because the Debtor resided at the Property, and 11 U.S.C. § 1123(b)(5) specifically excluded modification of claims secured by liens on a debtor's residence, the Court

determined that the Debtor's proposed plan was unconfirmable on its face. So long as any portion of the Property constituted the Debtor's residence, 11 U.S.C. § 1123(b)(5) could not be used to modify the Mortgage. This conclusion was consistent with *In re Macaluso*, 254 B.R. 799 (Bankr. W.D.N.Y. 2000), *In re Addams*, 564 B.R. 458 (Bankr. E.D.N.Y. 2017) and *In re Wages*, 508 B.R. 161 (B.A.P, 9th Cir. 2014). For these reasons, on January 13, 2020, the Court did not approve the Debtor's disclosure statement. (Order Approving Disclosure Statement Relating to Chapter 11 Plan of Gregory Funding as Plan Sponsor, *Inter Alia*, Jan. 13, 2020, ECF No. 79.). At the same hearing, the Court approved Gregory's Disclosure Statement and authorized Gregory to solicit votes. *Id*. The Court also set February 26, 2020 as the date for a hearing on the confirmation of Gregory's proposed plan (the "Confirmation Hearing"). *Id*.

In preparation for the Confirmation Hearing, Gregory solicited the necessary votes and filed the certification of ballots on February 20, 2020. (Certificate as to Balloting Accepting and Rejecting the Chapter 11 Plan, Feb. 20, 2020, ECF No. 81.). One day prior to the date the certification of ballots was filed, and seven days prior to the Confirmation Hearing, the SBRA became effective. Pub. L. No. 116-54 § 5, 133 Stat. 1079, 1087. Congress made clear that the changes to the Code set forth in the SBRA were intended to allow small businesses and individuals to take advantage of a chapter 11 process that would be less costly and time consuming than the current process. H.R. REP. No. 116-171, at 2 (2019).

At the Confirmation Hearing, the Court advised the parties of the SBRA and offered the Debtor the opportunity to proceed with the hearing as scheduled or the Court would adjourn the hearing for a short time to allow the Debtor to determine whether she wished to amend her petition. The Debtor opted to have the Confirmation Hearing adjourned. On March 3, 2020, the

Debtor filed a letter with the Court advising that she intended to amend her petition. (Letter to Court regarding Debtor's Intention to Amend Her Petition, Mar. 3, 2020, ECF No. 85.).

On March 6, 2020, the Debtor amended her petition to designate herself as a small business debtor under the newly amended definition, and to elect to proceed as a subchapter V debtor. (Aff. Pursuant to E.D.N.Y. LBR 1009-1(a), Mar. 6, 2020, ECF No. 87.). On March 6, 2020, the United States Trustee (the "U.S. Trustee") appointed Salvatore LaMonica, Esq., as the subchapter V trustee (the "Trustee") pursuant to 11 U.S.C. § 1183(a). (Notice of Appointment of Subchapter V Trustee, Mar. 6, 2020, ECF No. 88.). On March 10, 2020, the Court entered a scheduling order setting a status conference for April 1, 2020 and setting the Debtor's deadline to file a plan for June 8, 2020. (Order Scheduling Status Conference Under 11 U.S.C. § 1188, Mar. 9, 2020, ECF No. 91.).

On March 9, 2020, Gregory filed a motion objecting to the Debtor's designation as a subchapter V debtor (the "Motion"), raising a wide range of objections to the Debtor's designation, including objections based on prejudice to Gregory's vested rights in this case, as the Court was at the point of holding a hearing to confirm Gregory's proposed plan. (Mot. to Object to Debtor's Designation as a Sub-Chapter V, 16:6, Mar. 10, 2020, ECF No. 92.).[1] In addition, Gregory asserts that the Debtor is not eligible for subchapter V relief because she does not fit within the definition of "small business debtor" as set forth in newly amended 11 U.S.C. § 101(51D)(A). *Id.* 18-19:7-8. Even if she fits within the definition, Gregory asserts that the Debtor should be judicially estopped from amending her designation based on her prior representations to Gregory as well as her prior statements in the prior bankruptcy filings and the Current Case. (Reply in Connection with Objection to Debtor's Designation as a Sub-Chapter V Debtor, 8:4,

---

[1] Gregory has filed an Objection to Debtor's Designation as a Sub-Chapter V. ECF No. 89 and a motion seeking the same relief, ECF No. 92. The Court will refer to both filings as the Motion, ECF No. 92.

Mar. 26, 2020, ECF No. 99.). Gregory also argues that the Debtor cannot modify the Mortgage

pursuant to pursuant 11 U.S.C. § 1190(3) because the Debtor used the Mortgage proceeds to

purchase a residence, not to invest in Harbor Rose. (Mot. to Object to Debtor's Designation as a

Sub-Chapter V, 32:13, Mar. 10, 2020, ECF No. 92.).

On March 19, 2020 the U.S. Trustee filed an Objection ("U.S. Trustee Objection") to the

Debtor's election to be treated as a subchapter V case, raising timing and technical issues.

(United States Trustee's Objection to Debtor's Election to Be Treated as a Subchapter V Case,

Mar. 19, 2020, ECF No. 96.). On March 24, 2020, the Debtor filed her opposition to the Motion

(Debtor's Objection to Mot. of Gregory Funding for Order Denying & Voiding Debtor's

Election as a Sub-Chapter V Debtor, Mar. 24, 2020, ECF No. 97.), and Response to the U.S.

Trustee Objection. (Resp. to United States Trustee's Objection to Debtor's Election to Be

Treated as a Subchapter V Case, Mar. 24, 2020, ECF No. 98.). In her submissions, the Debtor

pointed to her professional experience in the hotel business, the unique characteristics of the

Property, her consistent use of the Property as a bed and breakfast, and the improvements the

Debtor made to the Property as sufficient grounds for finding that the Debtor is a small business

debtor within the definition of § 101(51D)(A), and that she qualified to proceed as a subchapter

V debtor.

On March 30, 2020, the Debtor filed a letter indicating that since the Debtor filed her

amended petition to make a retroactive election under subchapter V, the Debtor has been unable

to have any meaningful negotiations with Gregory. (Letter Pursuant to 11 U.S.C. § 1188(c)

Outlining Efforts by the Debtor to Attain Consensual Plan of Reorganization, Mar. 30, 2020,

ECF No. 101.). The Debtor further notes that the Trustee has attempted to persuade Gregory to

negotiate with the Debtor, to no avail. *Id*. On April 1, 2020, the Court held a telephonic hearing

on the Motion and the U.S. Trustee's Objection, which was attended by the Debtor's counsel, Gregory's counsel, the U.S. Trustee and the subchapter V Trustee. Thereafter, the matter was marked submitted.

### *Discussion*

On August 23, 2019, the President signed the SBRA into law, which became effective on February 19, 2020. Pub. L. No. 116-54 § 5, 133 Stat. 1079, 1087. The SBRA is codified in 11 U.S.C. §§ 1181-1195, and certain Bankruptcy Code sections that existed prior to the SBRA have been modified as well. *Id*. By enacting this law, Congress intended to streamline the reorganization process for small business debtors because small businesses have often struggled to reorganize under chapter 11. H.R. REP. No. 116-171, at 1-2 (2019).

Of pertinence, the Report from the House Committee on the Judiciary contains, *inter alia*, the following statement:

> Small businesses--typically family-owned businesses, startups, and other entrepreneurial ventures— "form the backbone of the American economy." By their very nature, however, the longevity of these businesses is limited. According to the Small Business Administration Office of Advocacy, approximately 20 percent of small businesses survive the first year, but by the five-year mark only 50 percent are still in business and by the ten-year mark only one-third survive. Notwithstanding the 2005 Amendments, small business chapter 11 cases continue to encounter difficulty in successfully reorganizing…the legislation allows these debtors "to file bankruptcy in a timely, cost-effective manner, and hopefully allows them to remain in business" which "not only benefits the owners, but employees, suppliers, customers, and others who rely on that business."

*Id*. at 2. (Citing the Unofficial Transcript of Oversight of Bankruptcy Law and Legislative Proposals: Hearing Before the Subcomm. on Antitrust, Commercial, & Admin. Law of the H. Comm. on the Judiciary, 116th Cong. 27 (2019) (on file with H. Comm. on the Judiciary staff)).

Newly amended 11 U.S.C. § 101(51D)(A) of the Bankruptcy Code defines a "small business debtor", in part, as "…a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of

the petition . . . in an amount not more than $2,725,625. . . not less than 50 percent of which arose from the commercial or business activities of the debtor. " 11 U.S.C. § 101(51D)(A).[2] The definition of "small business" excludes debtors whose primary business is owning "single asset real estate." *Id.*

Prior to enactment of the SBRA, the only statutory provision the Debtor could have considered to modify the Mortgage was 11 U.S.C. § 1123(b)(5). This section permits chapter 11 debtors to propose a plan that modifies the rights of holders of secured claims "…other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1123(b)(5).[3]

The SBRA has given small business debtors who designate themselves as subchapter V debtors another tool to be used when proposing a plan. Section 1190(3) provides as follows:

A plan filed under this subchapter—

(3) notwithstanding section 1123(b)(5) of this title, may modify the rights of the holder of a claim secured only by a security interest in real property that is the principal residence of the debtor if the new value received in connection with the granting of the security interest was—
(A) not used primarily to acquire the real property; and
(B) used primarily in connection with the small business of the debtor.

11 U.S.C. § 1190(3).

Furthermore, a trustee will be appointed in every subchapter V case. The subchapter V trustee will act as a fiduciary for creditors, in lieu of an appointed creditors' committee. The subchapter V trustee is also charged with facilitating the subchapter V debtor's small business

---

[2] Late on the evening of March 25, 2020, the U.S. Senate unanimously passed the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (S.3548) to combat the U.S. spread of coronavirus, which threatens to plunge U.S. into a global recession. For one year, the Act increases the eligibility threshold to file under subchapter V of chapter 11 of the Bankruptcy Code to businesses with less than $7.5 million of debt.
[3] As set forth in the facts, the Court ruled that because the Debtor resided at the Property, she could not modify the Mortgage under this provision.

reorganization and monitoring the subchapter V debtor's consummation of its plan of reorganization. 11 U.S.C § 1183 (a), (b).

Prior to enactment of the SBRA, small business debtors were required to file a plan of reorganization within 120 days after the order for relief, and "any party in interest" could file a plan at certain times and under certain circumstances. 11 U.S.C. §§ 1121(b), (c). The newly enacted law gives subchapter V debtors the exclusive right to file a plan of reorganization, which must be filed within 90 days after entry of the order for relief. 11 U.S.C. § 1189(a), (b). This plan deadline may be extended by the Court "…if the need for the extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1189(b).

### 1. *Does the SBRA apply to the Debtor's case?*
#### a. *Procedural and timing issues*

The SBRA is silent as to whether it applies to pending cases, or only to cases commenced after the effective date. In the Current Case, the Debtor did not designate herself as a small business debtor on her petition, which was filed over fifteen months prior to the effective date of the SBRA. The Debtor has since amended the petition to reflect 1) that she is a small business debtor and 2) that she seeks to proceed as a subchapter V debtor. The sole reason for filing the amended petition is to take advantage of the changes to the Bankruptcy Code and Rules pursuant to the SBRA. While the U.S. Trustee does not specifically urge the Court to find that the SBRA should only apply to cases filed after February 19, 2020, the U.S. Trustee does argue that procedural issues prevent the Debtor from electing to proceed as a subchapter V small business debtor. In the Motion, Gregory raises a wide range of objections to the Debtor's designation, including due process objections based on prejudice to Gregory's vested rights in this case, estoppel arguments, and objections based on whether the Mortgage is subject to modification under § 1190(3).

According to Fed. R. Bankr. P. 1020(a), once a small business debtor designates itself in the petition, "…the status of the case as a small business case shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding that the debtor's statement is incorrect." Fed. R. Bank. P. 1020(a). The Court's finding of incorrect designation is triggered by an objection to the designation. *See In re Angel Fire Water Co.*, LLC, No. 13–10868 ta11, 2015 WL 251570, at *6 (Bankr. D. N.M. Jan. 20, 2015) (finding that because the debtor never elected to be a small business debtor and no party objected to its status, it would be inappropriate for the court to alter the debtor's statement *sua sponte*).

Pursuant to Fed. R. Bankr. P. 1009(a), "[a] voluntary petition, list, schedule or statement may be amended by a debtor as a matter of course at any time before the case is closed." However, such amendment by the debtor is not necessarily controlling. The designation by the debtor in the original petition still retains evidentiary effect as it is signed under penalty of perjury. *In re Roots Rents, Inc.,* 420 B.R. 28, 39-40 (Bankr. D. Idaho. 2009).

As the U.S. Trustee points out, the SBRA imposes several requirements in subchapter V cases. First, a "SBRA trustee" is appointed by the U.S. Trustee, who is charged with development of a consensual plan. 11 U.S.C. § 1183(b)(7). Within 60 days of entry of the order for relief, the Court must hold a status conference with the SBRA trustee. 11 U.S.C. § 1188(a). Subsection (b) provides that the court may extend the 60-day deadline if "…the need for an extension is attributable to circumstances for which the debtor should not justly be held accountable." 11 U.S.C. § 1188(a). Pursuant to 11 U.S.C. § 1189(b), the subchapter V debtor shall file a plan within 90 days of entry of the order for relief, "…except that the court may extend the period if the need for the extension is attributable to circumstances for which the debtor should not be justly held accountable." 11 U.S.C. § 1189(b). In addition, the subchapter V

debtor must submit a status report 14 days prior to the status conference detailing efforts to reach a consensual plan. 11 U.S.C. § 1188(c).

According to the U.S. Trustee, there is no bar to applying the SBRA retroactively to cases commenced prior to February 19, 2020. However, because the order for relief in the Debtor's case was entered on October 24, 2018, the Debtor's 90-day deadline to file a plan has expired, and it does not appear that the SBRA trustee can effectively function as the facilitator of a consensual plan. Furthermore, many status hearings have already taken place in this case without the participation of a subchapter V trustee. First, the Court notes that both the 90 day deadline to file a plan and the 60 day deadline to hold a status conference may be extended if the need for an extension is attributable to circumstances for which the debtor should not be justly held accountable. Given that the Debtor's case was filed over fifteen months ago, the Court finds that to argue the Debtor should have complied with the procedural requirements of a law that did not exist is the height of absurdity. The Debtor is not required to comply with deadlines that clearly expired before the Debtor could have elected to proceed as a subchapter V debtor.

In one of the very few written decisions regarding the SBRA, the Bankruptcy Court found that any practicality and scheduling issues arising from an SBRA designation in a case commenced prior to the effective date of the SBRA, while they might result in redundant hearings or the "procedurally awkward" process of resetting deadlines, did not pose an absolute bar to retroactive application of the SBRA. *See In re Progressive Solutions, Inc.*, No. 8:18-bk-14277-SC, 2020 WL 975464, at *4 (Bankr. C.D. Cal. February 21, 2020) (The United States Trustee raised objections on several grounds related to practicality and scheduling issues which the court overruled. The court ultimately permitted the resetting or rescheduling of these

procedural matters "…in order to provide due process to all parties involved, unless vested rights of parties would be abridged or otherwise prejudiced.").

Armed with this case law and since there is no prohibition provided by Congress, the Court finds that it is within the Court's discretion to reset the timelines to allow the Debtor to avail herself of the newly enacted law that was not at her disposal when she filed the Current Case. Therefore, the Court overrules any objections raised by the U.S. Trustee or Gregory based on procedural or timing issues imposed by the SBRA.

### b.  *Gregory's substantive rights*

Gregory also argues that retroactive application of the SBRA to the Debtor's case is impermissible because it would be predjudicial to Gregory with respect to its "vested rights." Gregory interprets vested rights to mean prior orders issued by this Court permitting Gregory to file its own plan and approving Gregory's disclosure statement, along with the Court's finding that the Debtor's proposed disclosure statement was patently unconfirmable. However, an analysis of Gregory's argument and applicable case law leads the Court to a different conclusion.

Both Gregory and the U.S. Trustee acknowledge that there is no statutory prohibition to applying the SBRA to cases that were pending prior to the effective date of this legislation. The few cases that discuss this issue agree that while there is a presumption against retroactivity, this presumption applies to "'new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance.'" *In re Moore Props. of Person Cty., LLC*, No. 20-80081, 2020 WL 995544, at *3 (Bankr. M.D.N.C. February 28, 2020) (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 271 (1994) (other citations omitted)). As Judge Kahn noted, and this Court agrees, subchapter V incorporates many of the provisions already applicable to small business debtors. *In re Moore Props. of Person Cty., LLC*, 2020 WL 995544, at *4, n.10. At least one other court considering this issue has drawn the same conclusion. *In re*

*Body Transit, Inc. d/b/a Rascals Fitness*, No. 20-10014 (ELF), 2020 WL 1486784, at *6 (Bankr. E.D. Pa. Mar. 24, 2020) (holding that "…in general, the new subchapter V provisions do not impair the vested property interests of creditors and, therefore, the concerns supporting application of the canon of statutory construction disfavoring the retroactive application of new law are absent."). In addition, the amendment of the definition of "small business debtor" in 11 U.S.C. § 101(51D)(A) of the Bankruptcy Code did not appear to affect the contractual or vested property rights of parties that existed prior to the effective date of the SBRA. *In re Moore Props. of Person Cty., LLC*, 2020 WL 995544, at *4, n.10.

In discussing the applicability of the SBRA to a pending bankruptcy case, Judge Kahn in *In re Moore Props. of Person Cty., LLC* relied on guidance from the Supreme Court, which considered the issue of retroactivity in the context of a newly enacted bankruptcy statute. *Id*. at 3. (citing *United States v. Sec. Indus. Bank*, 459 U.S. 70 (1982)). The Court in *Sec. Indus. Bank* was called on to determine whether § 522(f) of the 1978 Bankruptcy Act, which provided debtors with a vehicle to remove certain liens that attached to property of the debtor's estate prepetition, violated the Fifth Amendment. *United States v. Sec. Indus. Bank*, 459 U.S. 70 (1982). Instead of dealing with this Constitutional clash head-on, the Supreme Court held that this provision was not intended to apply to property interests created before the enactment of the 1978 Bankruptcy Act. *Id*. The Court acknowledged that the Congressional authority to enact legislation "…has been regularly construed to authorize the retrospective impairment of contractual obligations." *Id*. at 74. (citing *Hanover National Bank v. Moyses*, 186 U.S. 181, 188 (1902)). However, the Supreme Court distinguished between using that authority to modify existing contractual obligations and using it to "defeat traditional property interests." *Id*. at 75. The Court in *Landgraf v. USI Film Products* further taught that "[t]he presumption against statutory retroactivity is

founded upon elementary considerations of fairness dictating that individuals should have an opportunity to know what the law is and to conform their conduct accordingly," and the principle that "settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products*, 511 U.S. 244, 245, 265 (1994). After analyzing the Supreme Court's rulings, Judge Kahn concluded that in the case before him, there were no taking or retroactivity concerns which were the focus of the Supreme Court in *Landgraf* and *Security Indus. Bank. In re Moore Props. of Person Cty., LLC*, 2020 WL 995544, at *4.

Judge Kahn did single out 11. U.S.C. § 1190(3) as a potential area of concern if it were to be retroactively applied to affect a property right existing prior to the enactment of the SBRA, but he did not make a ruling as to whether this provision violated the Fifth Amendment prohibition against taking property without compensation. *Id*. at *4, n.14.

While Gregory speaks in terms of damage to its vested rights resulting from the progress made in the Debtor's bankruptcy case, Gregory is focused on the wrong question. The correct question to ask is whether designation of the Debtor as a subchapter V debtor will impair Gregory's rights as they existed prior to the effective date of the SBRA. Clearly, the amendment to the definition of "small business debtor" does not amount to a taking of property. The SBRA merely amends the definition of small business debtor to ensure that certain debtors can avail themselves of a less costly and time-consuming path to reorganization that befits the family – owned businesses and other "Main Street" businesses that are currently in such dire need of relief. *See In re Moore Props. of Person Cty., LLC*, 2020 WL 995544, at *5 n.10 (Bankr. M.D.N.C. February 28, 2020) ("…the SBRA [amends] the definition of 'small business debtor' under chapter 1, but that revision does not affect contractual or vested property rights any more than the general availability of subchapter V.").

The more difficult question is whether 11 U.S.C. § 1190(3) should apply to property rights which vested prior to the effective date of the SBRA, such as Gregory's rights as mortgagee. In order to answer this question, the nature of Gregory's rights must be defined. At the time Gregory became the mortgagee with respect to the Property, Gregory was granted a bundle of rights under New York State law. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). The Note and Mortgage afforded *in personam* rights against the Debtor including a right to proceed against the Debtor to collect the amount due and owing under the Note. In addition, Gregory was granted *in rem* rights to proceed against the Property and seek a sale of the Property. The proceeds of the sale would then be applied against the amount due and owing. The right to sell the Property would generate only an amount of money that reflects the value of the Property as established at a free and fair auction sale. To the extent the sale left a deficiency, Gregory would have been entitled to proceed against the Debtor for the deficiency. However, because the Debtor previously received a discharge of her personal obligations, Gregory is left with only its rights against the Property under New York State law. In this unique case, Gregory can no longer seek entry of a judgment against the Debtor personally because of the discharge entered in the First Case. It should also be noted that Gregory may still avail itself of all rights granted to a secured creditor under the Code that have not been amended by the SBRA.

The exception to the anti-modification provision permits a debtor to modify the rights of certain mortgagees by allowing the debtor to bifurcate a claim into a secured and unsecured claim based on the value of the underlying collateral. 11 U.S.C. § 1190(3). Since Gregory can look solely to the value of the Property to satisfy the Debtors obligation as a result of the discharge the Debtor received in the First Case, application of 11 U.S.C. § 1190(3) will not deprive Gregory of any rights Gregory retained under state law. Even if the Note had not been

discharged in the First Case, the Court is not convinced that 11 U.S.C. § 1190(3) would raise sufficient Constitutional doubts to warrant only prospective application. The Bankruptcy Code works to abrogate contractual rights, but does not affect the vested property rights of mortgagees. As the Supreme Court stated in *Security Natl. Bank*, "our cases recognize, as did the common law, that the contractual right of a secured creditor to obtain repayment of his debt may be quite different in legal contemplation from the property right of the same creditor in the collateral. Compare *Hanover National Bank v. Moyses*, *supra*, with *Lousisville Joint Stock Land Bank v. Radford*, *supra*, and *Kaiser-Aetna v. United States*, 444 U.S. 164, 100 S. Ct. 383, 62 L. Ed.2d 332 (1979)." 459 U.S. 70, 75. Consequently, applying § 1190(3) to the modify the Mortgage would not violate Gregory's Fifth Amendment rights.

This still leaves the Court to consider whether applying the SBRA to the Debtor's case is predjudicial based on the history of this case, including the fact that the Court had previously rejected the Debtor's proposed plan and was poised to rule on whether to confirm Gregory's proposed plan. To this Court, this question does not raise Constitutional issues, nor does it require the Court to treat the rulings in the Debtor's case as "vested" rights. Until a plan is confirmed no property rights can be said to have vested in either the Debtor or Gregory. What Gregory is alluding to is whether by permitting the Debtor to elect treatment as a subchapter V debtor would cause prejudice to Gregory. As Judge Clarkson stated in *Progressive Solutions*, he would consider whether "…other events occurring during the pendency of the present case . . . would be disturbed by the designation of the case as a Subchapter V case." *In re Progressive Solutions, Inc.*, 2020 WL 975464, at *4. Similarly, in *In re Body Transit, Inc. d/b/a Rascals Fitness*, Judge Frank took into consideration whether permitting the debtor to elect treatment as a subchapter V debtor would unduly prejudice the objecting party. *In re Body Transit, Inc. d/b/a*

*Rascals Fitness*, 2020 WL 1486784, at *7. Given that subchapter V was not available to the Debtor on the Petition Date and the Debtor has made very clear from the outset the nature of Property as a business, the Court will not penalize the Debtor because after careful analysis by Congress the law has been amended to address the needs of debtors that engage in the type of business she operates. These types of debtors who are willing to risk everything to start and maintain their own businesses should not be penalized, rather, they should be applauded. Gregory will retain many of the rights it had at the inception of the case, any delay caused by this ruling is not sufficiently prejudicial to Gregory, given the current economic conditions. For these reasons, the Court finds that the SBRA applies to the Debtor's case in its totality.

### 2. *Does the Debtor fit within the definition of a "small business debtor"?*

As previously stated, the SBRA amended the definition of "small business debtor", in part, to provide that it is "a person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition . . . in an amount not more than $2,725,625. . . not less than 50 percent of which arose from the commercial or business activities of the debtor. " 11 U.S.C. § 101(51D)(A). The definition of "small business debtor" excludes debtors whose primary business is owning "single asset real estate." *Id*.

The Debtor listed on Schedule D filed on the Petition Date the Mortgage in the amount of $1,5000.000.00. This debt combined with the other secured and unsecured debts totals $1,562.182.00 which is within the threshold statutory threshold of § 101(51D). What remains to be determined is whether more than 50% of the Debtor's debts rose from her commercial or business activities, which was not part of the calculation when determining whether a debtor was a small business debtor prior to the effective date of the SBRA.

Since there is no statutory definition of what constitutes "commercial or business activities," Gregory looks to the definition of "consumer debt" to assist in determining what types of debt fit within this new description. A consumer debt is a debt "…incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). "Debt" means "liability on a claim," 11 U.S.C. § 101(11) (1982), and "claim," in turn, is broadly defined as any "right to payment, whether or not such right is ... secured, or unsecured." 11 U.S.C. § 101(4)(A).

Gregory correctly points out that this Court has previously held that a residential mortgage fell within the definition of "consumer debt." *In re Lemma*, 393 B.R. 299 (Bankr. E.D.N.Y. 2008). For the parties' understanding, there was no allegation in the *Lemma* case that the debtors used their residence for anything other than their personal residence. Other courts have drawn the same conclusion. *In re Kelly*, 841 F.2d 908, 912 (9th Cir. 1988) (recognizing that "[t]he statutory scheme so clearly contemplates that consumer debt include debt secured by real property that there is no room left for any other conclusion."); and *In re Hall*, 258 B.R. 45, 50 (Bankr. M.D. Fla. 2001) (a purchase money mortgage on a residence is a consumer debt). The same could be true of HELOCs, depending upon the use of the mortgage proceeds. *See In re Naut*, No. 07–20280 (REF), 2008 WL 191297, at *6 (E.D. Pa. Jan. 22, 2008) (holding that the debt was consumer debt because virtually all the proceeds from the refinancing and second mortgage debts were used to purchase and improve the property, not for any business purpose.); *Cox v. Fokkena* (*In re Cox*), 315 B.R. 850, 8-9 (B.A.P. 8th Cir. 2004) (despite the debtor's contention that they bought their home for investment purposes, the record revealed that the debt fit squarely within the definition of a consumer debt because the proceeds were used to complete the construction of and furnish the family's home.).

However, the fact that a debtor incurs mortgage debt to buy a residence does not automatically mean that the debt is consumer debt. "The test for determining whether a debt should be classified as a business debt, rather than as a consumer debt, is whether it was incurred with an eye toward profit…[c]ourts must look at the substance of the transaction and the borrower's purpose in obtaining the loan, rather than merely looking at the form of the transaction." *In re Martin*, No. 12–38024, 2013 WL 5423954, at *6 (S.D. Tex. Sept. 26, 2013). *See also In re Booth*, 858 F.2d 1051, 1055 (5th Cir. 1988) (a debt incurred with an eye toward profit is a business debt, rather than consumer debt.).

Gregory asserts that the form of the transaction was solely a residential loan for the purposes of purchasing a primary residence, not operating a business. Gregory points to the Mortgage whereby the Debtor declared, "I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument." (Emergency Mot. to Prohibit Use of Cash Collateral. & for Relief from Auto. Stay, Exh. A, 8:6, Nov. 12, 2018, ECF No. 17.). Gregory also directs the Court's attention to the fact that Harbor Rose was not formed until six years after the Mortgage was originally granted, and any subsequent change in the Debtor's use of the Property does not change the nature of the debt. Gregory asserts that none of the Debtor's debts, let alone 50% of the debts, are derived from the operation of Harbor Rose and none of the Mortgage proceeds were used to renovate the Property for the benefit of the business. Finally, Gregory emphasizes the Debtor's previous characterization of the Mortgage debt as consumer debt in her prior bankruptcy filings and the Current Case as grounds for finding that the Debtor is not a small business debtor within the definition of 11. U.S.C. § 101(51D)(A).

In response, the Debtor points to her long history in the hotel business, her stated need to create a business that would keep her close to her adopted daughter, and the very unique

characteristics of the Property to support a finding that the Mortgage debt was indeed incurred for commercial purposes. The Debtor purchased a six-bedroom historic mansion with the intention of converting this large house into a guest house. From the outset, the Debtor asserts she rented the guest rooms by advertising on various websites. The Debtor also invested in the Property by installing a new septic system to accommodate her business. Six year after purchasing the Property, she decided to register the Property as the first legal bed and breakfast in the Town of Huntington.

While the Property is clearly the Debtor's primary residence, the primary purpose of purchasing the Property appears to have been to own and operate a bed and breakfast. The Debtor's goal was to combine her business with the needs of her life as a single parent. The fact that the Debtor resides at the Property does not control whether the Mortgage is in the nature of a debt which arose from the commercial or business activities of the Debtor. In fact, the Debtor's affidavit in support of her opposition to the Motion indicates that the Town of Huntington will not grant a permit to run a bed and breakfast if the owner/ operator does not live inside the facility itself.

Case law supports this finding. *See In re Martin*, No. 12–38024, 2013 WL 5423954, at *6 (S.D. Tex. Sept. 26, 2013) ("[c]ourts must look at the substance of the transaction and the borrower's purpose in obtaining the loan, rather than merely looking at the form of the transaction…"). Based on the case law and the relevant facts, the Court finds that the Debtor fits within the definition of a small business debtor under the SBRA.

### 3.  *Does judicial estoppel apply to preclude the Debtor from claiming that the Mortgage debt arose from commercial or business activities?*

As an alternative argument, Gregory asserts that the Debtor is judicially estopped from asserting that the Mortgage debt arose from her commercial or business activities. Gregory

points out that the Debtor's current position that her debts are not primarily consumer debts is clearly inconsistent with her earlier position that those same debts are primarily consumer debts in her prior bankruptcy filings and in the original schedules filed in the current case.

A debtor may be judicially estopped from changing its legal position when a court has adopted and relied on it and the party claiming judicial estoppel suffers an unfair detriment as a result, unless mistake or inadvertence is an applicable defense. *See New Hampshire v. Maine*, 532 U.S. 742, 742-743 (2001) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'") (citing *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). *See also Ahrens v. Perot Sys. Corp.*, 205 F.3d 831, 833 (5th Cir. 2000) ("Judicial estoppel applies to protect the integrity of the courts--preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it.") (other citations omitted)). Inadvertence can be shown where the party in question either lacks sufficient knowledge of the undisclosed claims or would have no motive for their concealment. *Superior Crewboats, Inc. v. Primary P & I Underwriters* (*In re Superior Crewboats, Inc.*), 374 F.3d 330, 335 (5th Cir. 2004) (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)).

The Supreme Court in *New Hampshire v. Maine* recognized that "'[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle.'" *New Hampshire v. Maine*, 532 U.S. at 750. However, a general test for determining when judicial estopped may be invoked has been developed, as follows: (i) a party's later position is clearly inconsistent with its earlier position, (ii) the party's

former position has been accepted in some way by the court in the earlier proceeding, such that "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled,'" and (iii) the "party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire v. Maine*, 532 U.S. at 750-51.

Judicial estoppel has been applied in the bankruptcy context where a debtor changes its designation on the petition. *See In re Save Our Springs (S.O.S.) Alliance, Inc.*, 393 B.R. 452 (Bankr. W.D. Tex. 2008) (judicial estoppel prevented the debtor from amending its petition to designate itself as a non-small business debtor because it was inconsistent with its original designation and the debtor had already enjoyed the benefits of expedited proceedings as a small business debtor.).

Relying on *In re Jones*, 556 B.R. 327 (Bankr. E.D. Mich. 2016) and *In re Orlando*, No. 17-41616 (CJP), 2018 WL 3637231 (Bankr. D. Mass. July 30, 2018), Gregory asserts that bankruptcy courts have adopted judicial estoppel to bar debtors from changing the description of their debts from consumer debts to non-consumer debts. In *In re Jones*, after the U.S. Trustee moved to dismiss the chapter 7 debtor's case under section 707(b) of the Bankruptcy Code, the debtor changed her response and indicated that her debts were "not primarily consumer debts, but were not primarily business debts either." *In re Jones*, 556 B.R. 327 at 330. The court in *In re Jones* noted that the timing of the debtor's change was indicative of "gamesmanship" on the part of the debtor in order to render section 707(b) inapplicable and escape possible dismissal of the case. *Id*. at 335. Similarly, in *In re Orlando*, the bankruptcy court found that the debtor's change in his position regarding the nature of his debts from consumer debts to business debts after the

U.S. Trustee filed a motion to dismiss the debtor's case under 11 U.S.C. § 707(b) was a "late strategy change" instead of a mistake or inadvertence. *In re Orlando*, 2018 WL 3637231, at *4.

In applying the above factors to the Debtor's case, the Court finds that judicial estoppel does not bar the Debtor's change in description of the nature of her debts. First, it is not clear that her change of description of her Mortgage debt as a business debt is inconsistent with the Debtor's prior description of her debts. The Debtor referred to the Property as a bed and breakfast in the Current Case. By way of example, when the Debtor was asked "What is the property?" she checked the box "Other" and wrote "B&B Inn" on Schedule A/B instead of checking the box for "Single-family" home. (Case No. 8-18-77193-reg, ECF No.1.). In Schedule C, the Debtor claimed an exemption for the Property pursuant to 11 U.S.C. § 522(b)(2) wherein she described it as "Bed & Breakfast." *Id*. Again, on Schedule D, the Debtor described the Property as a "Bed and Breakfast." *Id*. The Debtor also lists her income and expenses from the operations of Harbor Rose in her Statement of Current Monthly Income. *Id*. ECF No. 26. These representations by the Debtor reflect the hybrid nature of the Property, which is rare. The Property is integral to the business operations, and the Court finds that the Debtor was attempting to be clear and forthright in her representations regarding the Property and the Mortgage.

Second, the Court took no specific action in the Current Case or in the prior bankruptcy filings based on a description of the Mortgage debt as consumer debt. This Court was not misled about the nature of the Mortgage which encumbered the Property. Third, the Debtor cannot be said to have taken unfair advantage over Gregory by changing the description of her debts to fit within a statute that did not exist at the time of the Petition Date. It is more akin to an innocent choice by the Debtor than gamesmanship. The Debtor's change in status was not made in

response to a 11 U.S.C. § 707(b) motion to dismiss by the U.S. Trustee, nor was it done with "the obvious motive" to make a certain law inapplicable. In fact, the law was not applicable at the time of the Petition Date because it did not exist. The SBRA was designed to protect small business debtors by affording them the right to reorganize in a timely, cost-effective manner. The Court also takes into consideration whether the Debtor's change in description of her debt, if permitted, would be unfairly detrimental to Gregory. Gregory points to the unfair burden and delay imposed, as Gregory was poised to confirm its proposed plan of liquidation that would have resulted in a sale of the Property and payment to Gregory from the sale proceeds. While the Court recognizes that there will be some prejudice to Gregory if the Debtor is permitted to recharacterize her debt, the Debtor must still satisfy the requirements of subchapter V in order to confirm a plan. There is no guarantee that the Debtor will be successful in this attempt, but given the current economic climate, it is doubtful that a sale of the Property could take place any time in the near future. Given the unique circumstances of this case, the prejudice to Gregory is minimized.

Finally, Gregory relies on case law where courts have judicially estopped debtors from changing their representations in petitions and schedules, made under penalties of perjury, when those changes were made because of changed circumstances in their bankruptcy cases. *See In re Osborne*, 490 B.R. 75 (Bankr. S.D.N.Y. 2013) (Court applied judicial estoppel where the debtors moved to vacate the discharge and dismiss their chapter 7 case following the discovery of a previously undisclosed asset.). Here, the Debtor is not reacting to the discovery of some wrongdoing she may have committed, nor did the Debtor make false claims in her petition. The Debtor is merely amending her petition and avail herself of the right created by a statute that did not exist as of the time of Petition Date. The cases cited by Gregory have a common denominator

that is inapposite to the present case; they did not concern a newly enacted law that is designed to protect debtors like the Debtor in the Current Case, who are small business owners.

For all the reasons stated herein, this Court finds that the instant case comes within the purview of 11 U.S.C. § 101(51D)(A) because the primary use of the Property was, and remains, for the operation of a bed and breakfast, rather than as a principal residence. The fact that the Harbor Rose entwines the Debtor's personal and business life does not control whether the Mortgage is a business debt or a consumer debt. In essence, the Debtor is not changing her position; the significant changes to the Bankruptcy law enable the Debtor to take advantage of a new definition of "small business debtor" in order to attempt to save her business.

### 4. *Is the Debtor entitled to utilize 11 U.S.C. § 1190(3)?*

Both the Debtor and Gregory agree that in order to propose a plan and successfully exit bankruptcy, the Debtor must be permitted to modify the Mortgage. Prior to the effective date of the SBRA, the only statutory provision the Debtor could rely on to modify the Mortgage was 11 U.S.C. § 1123(b)(5). This section permits chapter 11 debtors to propose a plan that modifies the rights of holders of secured claims "…other than a claim secured only by a security interest in real property that is the debtor's principal residence…" 11 U.S.C. § 1123(b)(5). The Debtor's proposed plan sought to utilize this provision to modify the Mortgage, but this Court found that because the Debtor uses the Property for both business and residential purposes, the Property is the Debtor's principal residence. *See In re Harriman*, 2014 WL 131203 at *3 (Bankr. N.D. Cal.) (citing *In re Wages*, 508 B.R. 161, 168 (B.A.P. 9th Cir. 2014)). Therefore, the Debtor was prohibited from modifying the Mortgage under the law as it existed at the time.

The SBRA has given small business debtors who designate themselves as subchapter V debtors another tool to be used when proposing a plan. § 1190(3) provides as follows:

A plan filed under this subchapter—

(3) notwithstanding section 1123(b)(5) of this title, may modify the rights of the holder of a claim secured only by a security interest in real property that is the principal residence of the debtor if the new value received in connection with the granting of the security interest was—
    (A) not used primarily to acquire the real property; and
    (B) used primarily in connection with the small business of the debtor.

11 U.S.C. § 1190(3).

Although there are three decisions of record regarding application of the SBRA, only *In re Moore Props. of Person Cty., LLC* mentioned this particular provision. The *In re Moore Props. of Person Cty., LLC* court found that it did not apply in the case before it because the debtor was not an individual. *In re Moore Props. of Person Cty.*, *LLC*, 2020 WL 995544, at *4 n.14. In *dicta*, the court did state that if this section did apply, the court would consider whether the application of 11 U.S.C. § 1190(3) constituted an impermissible taking. *Id*. Therefore, the Court cannot look to prior case law to interpret this section.

This Court shall commence its analysis by employing the applicable rules of statutory construction. The Court is charged with interpreting all federal and state statutes according to their plain meaning. *Tyler v. Douglas*, 280 F.3d 116, 123 (2d Cir. 2001), *cert. denied*, 536 U.S. 906 (2002). In determining its degree of ambiguity or clarity, courts cannot examine statutory language in isolation. *Robinson v. Shell Oil Co*., 519 U.S. 337, 341 (1997). The Court must determine the specific context in which the language appears, and the statutory scheme's broader framework in order to preserve the coherence and consistency of the statutory scheme. *U.S. v. Ron Pair Enters., Inc*., 489 U.S. 235, 240-41 (1989) (citing *Northern Pipeline Construc. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 52-53 (1982)). "[I]n matters of statutory interpretation, the plain meaning of statutory language is often illuminated by considering not only the particular statutory language at issue, but also the structure of the section in which the key language is found, and the design of the statute as a whole and its object." *Pellegrino v. United States*

*Transp. Sec. Admin.*, 896 F.3d 207, 216 n.10 (3d Cir. 2018) *reh'g en banc granted*, 904 F.3d 329 (3d Cir. 2018).

Armed with these principles, the Court will undertake its interpretation of this section. First, unlike 11 U.S.C. § 1123(b)(5), which precluded modifications of claims secured by mortgages on the debtor's principal residence, 11 U.S.C. § 1190(3) specifically permits the modification of claims secured by mortgages on the debtor's principal residence. Therefore, the plain language of the first paragraph of 11 U.S.C. § 1190(3) does not act as an impediment to the Debtor's attempt to modify the Mortgage. Indeed, the Property falls squarely within this paragraph.

Second, subparagraphs (A) and (B) do not bar the Debtor outright from using this provision to modify the Mortgage. Subparagraphs (A) and (B) further limit the application of this provision to mortgage proceeds that were:

(A) not used primarily to acquire the real property; and

(B) used primarily in connection with the small business of the debtor.

Starting with subparagraph (A), the statute reads that the mortgage proceeds cannot have been used "primarily to acquire the real property." As a matter of common usage, the word "primarily" means "for the most part." *Primarily*, Merriam-Webster's Law Dictionary, (last visited Apr. 9, 2020). In the context of the 1954 Internal Revenue Code, the Supreme Court held that "primarily" means "of first importance" or "principally" rather than meaning "substantial." *Malat v. Riddell*, 393 U.S. 569, 572 (1966). The phrase "real property" refers back to the real property that is the debtor's residence. In this case, the question for the Court to answer is whether the Mortgage proceeds were used primarily to purchase the Debtor's residence. Unlike 11 U.S.C. § 1123(b)(5) which took an all-or-nothing approach to loans securing the debtor's

residence, 11 U.S.C. § 1190(3) asks the Court to determine whether the primary purpose of the mortgage was to acquire the debtor's residence.

Subparagraph (B) requires the Court to determine whether the mortgage proceeds were used primarily in connection with the debtor's business. Both of these subparagraphs direct the Court to conduct a qualitative analysis to determine whether the principal purpose of the debt was not to provide the debtor with a place to live, and whether the mortgage proceeds were primarily for the benefit of the debtor's business activities. This interpretation is consistent with the purpose and intent of the SBRA, which is to assist small business owners in whatever form they take, and to give them speedy access to relief via the bankruptcy process. As stated above, the Congressional intent of the SBRA was to keep small business owners in business, and to benefit the employees, suppliers, customers and others who rely on that business. A reading of this provision which takes into account the primary purpose of the mortgage debt instead of a bright-line test that would reject any business owner in the Debtor's unique position is consistent with the intent of the legislation.

Clearly, some business owners, such as business owners who took out a second mortgage and used the proceeds to buy farm equipment or a taxi medallion, easily fall into this classification. However, an inflexible reading of this statute would bar legitimate business owners such as the Debtor from obtaining relief under the SBRA. The Court does not find that this interpretation would be consistent with the goals of the SBRA.

The Court proposes that the following factors be considered to determine whether the mortgage in question is subject to modification under this section:

1. Were the mortgage proceeds used primarily to further the debtor's business interests;

eg    Doc 107    Filed 04/10/20    Entered 04/10/20 11:58:21

 

2. Is the property an integral part of the debtor's business;

3. The degree to which the specific property is necessary to run the business;

4. Do customers need to enter the property to utilize the business; and

5. Does the business utilize employees and other businesses in the area to run its operations.

In the Debtor's case, she did not purchase a residence and use one room as an office space. The Debtor bought real property and commenced using the rooms to rent and spent considerable time and resources on obtaining the proper permits to run the Property as a bed and breakfast. The primary purpose of the Property is to offer rooms for nightly fees. Harbor Rose serves a variety of guests, including guests visiting the nearby Cold Spring Harbor labs. Harbor Rose also provides holistic services to the guests staying at the Property with package services offered for additional fees. Although the Mortgage proceeds were not used to refurbish the Property or to obtain the proper zoning changes and permits, the Mortgage proceeds were used to purchase the building that houses the business run by the Debtor.

Based on its interpretation of 11 U.S.C. § 1190(3), the Court finds that there is sufficient evidence to hold a full evidentiary hearing to determine whether the Debtor may use this statute to modify the Mortgage. Therefore, if the Debtor proposes a plan which provides for bifurcation of the Mortgage, the Court shall schedule a hearing to determine whether she may take advantage of this provision using the factors listed above, along with any additional evidence produced by the parties.

### *Conclusion*

For all the reasons stated herein, the Court finds that the Debtor is a "small business debtor" within the purview of 11 U.S.C. § 101(51D)(A) and is eligible to proceed as a

subchapter V debtor in this case.  Therefore, the Court overrules the U.S. Trustee Objection and overrules the objections raised by Gregory in the Motion. An order consistent with this Memorandum Decision will be entered forthwith.



**Dated: Central Islip, New York**
**April 10, 2020**

**Robert E. Grossman**
**United States Bankruptcy Judge**